# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LOPEZ,<br><br>        Plaintiff,<br><br>  v.<br><br>A.K. SCRIBNER, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. CV-F-04-5595 OWW DLB P<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(Docs. 81, 87) |

**A.**     **Procedural History**

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed January 29, 2004, against defendant Yale for violating his civil rights. Plaintiff alleges defendant Yale was deliberately indifferent to his serious medical needs in withholding medically prescribed soft shoes sent with him during his transfer from High Desert State Prison (HDSP) to Corcoran State Prison (CSP) on February 15, 2001. On June 2, 2006, the District Court adopted the undersigned's recommendation to dismiss all other claims and defendants for failure to exhaust administrative remedies.

Plaintiff filed a motion for summary judgment on June 6, 2006 and defendant filed an opposition and cross motion for summary judgment on June 16, 2006. Plaintiff filed an opposition to defendant's motion for summary judgment and a reply to defendant's opposition on July 10, 2006.

**B.     Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As to plaintiff's motion for summary judgment, "[w]here the moving party has the burden of proof, . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). Thus, on a summary judgment motion, the moving party must demonstrate there is no triable issue as to the matters alleged in its own pleadings. Id. This requires the moving party to establish beyond controversy every essential element of its claim or defense. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). The moving party's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to defendant's motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing
2 party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec.</u>
3 <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence
4 of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is
5 required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery
6 material, in support of its contention that the dispute exists. Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586
7 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that
8 might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477
9 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630
10 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
11 return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436
12 (9th Cir. 1987).

13   In the endeavor to establish the existence of a factual dispute, the opposing party need not
14 establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
15 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
16 trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
17 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
18 <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
19 amendments).

20   In resolving the summary judgment motion, the court examines the pleadings, depositions,
21 answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c).
22 The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable
23 inferences that may be drawn from the facts placed before the court must be drawn in favor of the
24 opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655
25 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing
26 party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards</u>
27 <u>v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th
28 Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

1 simply show that there is some metaphysical doubt as to the material facts. Where the record taken
2 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
3 issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**C.     Statement of Undisputed Facts**

1. Plaintiff Andrew Lopez (D-86271) is a California prisoner who brings suit *in pro per*.
2. The sole remaining claim in this action is whether defendant Yale was deliberately indifferent to a serious medical need with respect to withholding plaintiff's soft shoes. Doc. 80, p. 2, ¶ 6.
3. Dr. V. Sanchez, M.D. is a physician licensed to practice in the State of California and has been so licensed since 1980. He is Board Certified in Surgery. He is an employee of the California Department of Corrections and Rehabilitation (CDCR) and has been employed as a medical doctor with CDCR since June 5, 2000. His current assignment is "Physician and Surgeon" and he is assigned to the California State Prison Corcoran (CSP-COR). Decl. Of Dr. Sanchez, p.1, ¶ 2.[1]
4. At the request of the Office of Attorney General, Dr. Sanchez reviewed the medical file of plaintiff. He also read plaintiff's civil rights complaint. Dr. Sanchez was asked to address plaintiff's medical claim as to Yale, who, it is alleged, improperly withheld plaintiff's soft shoes. Dr. Sanchez first sets forth a chronology of events related to plaintiff's medical care and then addresses the claim involving Yale. Decl. Of Dr. Sanchez, p. 2, ¶ 2.
5. Plaintiff accessed Health Care Services numerous times relative to complaints about wide feet. Decl. Of Dr. Sanchez, p. 2, ¶ 6.
6. On August 3, 1993, while housed at Duel Vocation Institution (DVI) Plaintiff was issued a Chrono to wear his own shoes. Decl. Of Dr. Sanchez, p. 2, ¶ 7.
7. On April 17, 1997, Plaintiff filed a grievance, Log No. HDSP C-97-02028, in which he demanded "proper foot wear [be] delivered within one (1) week, and $500.00 for pain and suffering; I want HDSP's laundry supervisor to refrain from withholding needed and

---

[1] Plaintiff's objection that Dr. Sanchez has never examined him is overruled. This objection goes to the weight of the evidence not its admissibility.

4

prescribed body wear articles; or, I want unspecified damages authorized by law." Plaintiff's appeal was denied at the second level of review, relative to the request for money. In the body of the response the acting Chief Medical Officer (CMO) explained to Plaintiff that "[s]hoe size is a clothing issue and not a medical issue. You will, however, be issued a chrono for EEE shoes and be ducated for evaluation for our pilot boot program." Decl. of Dr. Sanchez, ¶ 8.

8. On January 30, 1997, clinic notes reflect the entry, "[s]hoes too narrow. Needs EEE." Decl. of Dr. Sanchez, ¶9

9. On June 25, 1997, while at HDSP, Plaintiff was seen by Dr. Charles Hooper, the CMO, who was responding to a CDCR grievance, Log No. HDSP C-97-02028. Dr. Hooper wrote a chrono for EEE wide shoes and an order to ducat Plaintiff to a clinic for evaluation of new foot wear (Vibram wide boots EEE). Dr. Hooper wrote, "Feet - minor pressure points noted dorsum both feet. Minimal pressure points on the feet." Decl. of Dr. Sanchez, ¶ 10.

10. Minimal pressure points is equivalent to when an individual comes home from a long day at work, takes off his shoes, and has minor reddish markings on the feet from wearing the shoes all day. Dr. Sanchez opines that this does not reflect a serious medical condition. In issuing the authorization for EEE state issued boots, Dr. Sanchez finds nothing in the file to suggest that the issuance of the chrono was based on medical necessity, but rather, that it was issued solely for comfort. Decl. of Dr. Sanchez, ¶ 11.

11. After a review of plaintiff's medical file, Dr. Sanchez opines that there is no medical evidence to suggest that plaintiff suffered any permanent injury, scars, scrapes, blisters, deformities, pain or a serious medical condition as a result of anything having to do with his feet. He also opines that there is no medical evidence to indicate that plaintiff was suffering from any serious medical ailment or pain as a result of not immediately obtaining the shoes he desired. Decl. of Dr. Sanchez, ¶ 12.

12. On October 27, 1999, Plaintiff wrote in a grievance "I want my medically prescribed shoes (size 8.5 EEE) NOW; I want HDSP R&R staff to be properly trained and supervised, including area of liability for interfering with citizen's medically prescribed treatment; I want

5

|   |   |   |
|---|---|---|
| 1 |  | the names and titles of all staff working 3rd watch R&R on 9-8-99, and the names and titles |
| 2 |  | of all staff responsible for processing I/M property to C yard #2." The appeal, Log No. |
| 3 |  | HDSP C-99-02465, was partially granted at the first level of review in that size 9 EEE boots |
| 4 |  | were given to him until the size 8.5 EEE shoes, which were special ordered, came in. The |
| 5 |  | boots were ordered and issued by the laundry services. Decl. of Dr. Sanchez, ¶ 13. |
| 6 | 13. | On April 3, 2002, while housed at CSP-COR, plaintiff was referred to a podiatrist, who is |
| 7 |  | a licensed health care professional who diagnoses, treats, operates and prescribes for any |
| 8 |  | disease, injury, deformity or other condition of the foot. Progress notes of this day indicate |
| 9 |  | that plaintiff has wide feet and his shoes do not fit. Decl. of Dr. Sanchez, ¶ 14. |
| 10 | 14. | On March 29, 2002, plaintiff filed an administrative grievance, Log No. COR 01-1786, |
| 11 |  | claiming he had been placed in administrative housing and was not allowed certain property |
| 12 |  | items, including special shoes. He maintained that he had a medical need to be allowed his |
| 13 |  | confiscated athletic shoes. He requested that the institution place his property in storage and |
| 14 |  | that he be provided his athletic shoes. The second level response indicated the institution |
| 15 |  | was in compliance with State Law and the regulations. The items were appropriately |
| 16 |  | confiscated upon his placement in segregated housing. He was provided the opportunity to |
| 17 |  | send the items home or donate them. Additionally, the second level stated that the appellant |
| 18 |  | did not have the medical authorization to retain tennis shoes while housed in segregated |
| 19 |  | housing. The institution did not have the capability to store inmate property as requested by |
| 20 |  | plaintiff. The Director's level decision also denied plaintiff's appeal. Decl. of Dr. Sanchez, |
| 21 |  | ¶ 15. |
| 22 | 15. | On July 22, 2002, while still at CSP-COR, a memorandum was authored by Dr. Bendon and |
| 23 |  | Warden Galaza, stating that personal shoes were not allowed at the prison and a previous |
| 24 |  | authorization to allow personal shoes was rescinded. Decl. of Dr. Sanchez, ¶ 16. The |
| 25 |  | memorandum also stated that inmates with orthopedic shoes would be allowed to wear them |
| 26 |  | in such areas as visiting as they were prescribed appliances. Def. Ex. A, Att. 8. |
| 27 | 16. | On August 8, 2002, Dr. Hasadsri, CSP-COR, evaluated plaintiff. The doctor noted that |
| 28 |  | plaintiff "wants large size shoes. Inmate was told to get large size shoes or boots from C.O." |

6

|   |   |   |
|---|---|---|
| 1 |  | Decl. of Dr. Sanchez, ¶ 17. |
| 2 | 17. | On September 17, 2002, Dr. Krystal, CSP-COR Podiatry Clinic, noted that plaintiff complained that the State issued shoes were too narrow for his feet. The doctor wrote, "Pt has extra wide feet and wears shoe six 9EEE." A medical Chrono for state issued soft shoes size 9EEE was approved while plaintiff was housed at CSP-COR.   Decl. of Dr. Sanchez, ¶ 18. |
| 7 | 18. | On September 17, 2002, plaintiff filed grievance Log No. CSP C-6-04000230. In this grievance, plaintiff claimed he was being denied properly fitting shoes as prescribed by qualified medical staff.  His request was for properly fitting shoes as prescribed. Additionally he wanted the names of all persons responsible for supplying properly fitting shoes.  A staff meeting with the Warden was conducted to define the responsibility of providing extra wide shoes.  The appeal was granted with the inmate being ordered wider shoes. Decl. of Dr. Sanchez, ¶ 19. |
| 14 | 19. | On September 6, 2003 a CSP COR Medical Interdisciplinary Note was generated by LVN Suarez.  She wrote that plaintiff yelled at her that he wanted her to document that officers would not give him his property.  She told him it was a custody issue.  Plaintiff then stated he was having chest pain and tightness. LVN Suarez took his vitals which were stable. She saw no signs of distress.   Decl. of Dr. Sanchez, ¶ 20. |
| 19 | 20. | On September 16, 2003, plaintiff filed a request for interview writing, "[t]ime has come for my followup appointment as prescribed when I seen the foot specialist last year 9-17-02. Please comply with that specialist's prescription. And please return the GA-22 with a written response and a legible signature." Decl. of Dr. Sanchez, ¶ 21. |
| 23 | 21. | On September 18, 2003, physician's progress notes indicate plaintiff was examined and it was noted that he had "slightly wider feet but no deformity or need for special shoe."  Decl. of Dr. Sanchez, ¶ 22. |
| 26 | 22. | On February 28, 2004, plaintiff filed an administrative grievance, Log No. COR 04-122, alleging that inmates should not have to attend doctor's line to get medication refills. He also claimed that whatever recommendations a specialist made should be adhered to by |

institutional medical staff.  The grievance was denied at the first, second and third levels. Decl. of Dr. Sanchez, ¶ 23.

23. In a staff complaint dated August 19, 2004, plaintiff alleged that Corcoran employees had conspired to deprive him of a constitutionally protected activity in retaliation for exercising his first amendment rights.  Plaintiff alleged that on July 19, 2002, his cell was ransacked and his medically prescribe shoes were removed.  After a supervisory inquiry, the grievance was denied at the first and second level.  Decl. of Dr. Sanchez, ¶ 24.

24. On June 2, 2005, staff at CSP-COR referred plaintiff to a podiatrist.  Decl. of Dr. Sanchez, ¶ 25.

25. On August 1, 2005, an CSP-COR Podiatry note reads, "Back of heel discomfort and 3d toe lesion. Shoe in ill fitting repair.  No lesions today.  Exostosis calcaneus B.  Lesions resolved toes.  Return to podiatry clinic as necessary.  Soft shoe chrono, change shoe gear."  Decl. of Dr. Sanchez, ¶ 26.

26. On August 18, 2005, plaintiff wrote a request for an interview, complaining that"my feet are in pain, I see podiatrist 2 weeks ago.  Nothing has been done.  I want to see the doctor for my suffering feet and markings to be fully documented.  Decl. of Dr. Sanchez, ¶ 27.

27. On August 23, 2005, a medical document reflects: "pain/feet problems onset 5 months ago.  No pain now."    Decl. of Dr. Sanchez, ¶ 28.

28. On November 28, 2005, Dr. Pima authored a physician's order "replace shoe gear with 9 ½ EEE shoe.  Recommend chrono for soft shoe.  Follow up with Podiatry . . . " The physician adds, "wide foot ingrown nails.  Shoes ill repair with sides breaking down.  Recommend wider shoe gear."    Decl. of Dr. Sanchez, ¶ 29.

29. In applying his education, training and knowledge as a medical doctor, Dr. Sanchez concluded from the medical record that: (1) there is no medical evidence demonstrating that plaintiff suffered a severe or serious medical condition requiring the immediate issuance of special shoes; (2) there is no medical evidence demonstrating that plaintiff suffered any serious or permanent injury as a result of any delay in obtaining the correct shoe size; and (3) that plaintiff currently has wider shoes provided by the institutional clothing department.

1          Decl. of Dr. Sanchez, ¶ 31-33.

2   30.   Dr. Sanchez reviewed plaintiff's CDCR Central File and administrative grievances and found no documentation which he felt reflected any employee of CSP-COR inappropriately withholding soft shoes.   Decl. of Dr. Sanchez, ¶ 34.

31. Dr. Sanchez does not believe wide feet are a condition that requires treatment by the podiatrist. Procurement, which oversees the clothing department at the prison, attempts to provide shoes to all inmates, including those with wide feet. Decl. of Dr. Sanchez, ¶ 35.

32. Dr. Sanchez opines that Yale, in withholding prescribed soft shoes upon plaintiff's transfer from HDSP to CSP-COR was not indifferent to a serious medical condition because plaintiff did not suffer a serious medical condition. Dr. Sanchez opines that the fact that wider shoes were ordered does not mean plaintiff suffered a serious medical condition and there is and was nothing wrong with his feet. Dr. Sanchez concludes that it was entirely appropriate from a medical perspective to ensure that any footwear or medical treatment be authorized by medical personnel and that such authorization be current at the prison where the inmate is housed.   Decl. of Dr. Sanchez, ¶ 36.

33. Yale was employed by the CDCR as a correctional officer and at the time pertinent to this lawsuit, was assigned to CSP-COR. He denies violating plaintiff's rights. Declaration of J. Yale ¶¶ 1, 3.

34. On March 28, 2001, plaintiff filed an administrative grievance, Log No. CSP-C-6-01-01786. The grievance was reviewed and stamped "Emergency Processing Not Warranted." The grievance did not meet the criteria for emergency processing found in California Code of Regulations, title 15, § 3084.7(a). Even though plaintiff states that he submitted the grievance as a staff complaint (which would require bypassing the informal level), Yale states that the grievance was properly categorized as a property issue, thus requiring an informal response. Declaration of J. Yale ¶4.

35. On May 21, 2001, Yale provided plaintiff with an informal response. In the response, Yale denied plaintiff's grievance and explained that his "unauthorized property will not be held pending outcome of this appeal. It was previously mailed out on 4.23.01 to the address given

9

|   |   |
|---|---|
| 1 | by you on signed trust account withdrawal order form . . . you were issued all authorized property in allowable quantities including all legal work as outlined in O.P. 806.  For safety and security reasons while housed in SHU you were not permitted to be present while property was processed.  On 4.13.01 at the request of 4B law library C/O E. Luna, you were issued 5 legal type books form you mail-out property in addition to the 7 previously issued."  Declaration of J. Yale ¶5. |
| 36. | On June 5, 2001, plaintiff reported that he was dissatisfied with Yale's response. Declaration of J. Yale ¶6. |
| 37. | On September 10, 2001, Sergeant Drew denied Plaintiff's grievance at the first formal level indicating, "See OP#806 inmate property allowed in Corcoran SHU page 23 Section E.  You were allowed to keep 7 legal books and also issued another 5 books from 4B law library.  Your 5 cassette tapes are being stored in 4B property.  Until you get a medical chrono from Corcoran doctors saying otherwise, your inmate issued tennis shoes are all that you are allowed.  See Attachment."  Declaration of J. Yale ¶7. |
| 38. | On September 25, 2001, plaintiff objected to the denial and complained that he was being subjected to "feet pain, mental anguish and emotional distress." Declaration of J. Yale ¶8. |
| 39. | On October 19, 2001, J. Marshal, CCII (A), reviewed plaintiff's grievance and denied it. As explained, plaintiff alleges that when placed into the COR Security Housing Unit (SHU), he was told to sign for his property before receiving it.  At the time of receipt, plaintiff claims that supplies and legal materials were withheld, as well as not receiving his medically prescribed shoes.  He further claims the fact that his shoes were withheld caused him suffering and harm to his feet (pain, mental anguish and emotional distress). Declaration of J. Yale ¶9. |
| 40. | CDC 601, Log No. CSP-C-6-01-01786, ¶ H, where plaintiff would have normally recorded his continuing object, is blank. Declaration of J. Yale ¶10. |
| 41. | Plaintiff claims that he sent several inmate requests to Yale in regards to his need to be provided special shoes.  Yale alleges that according to 4B property files, Yale received only one request dated April 1, 2001, which listed items "unaccounted for" including section "h) |

10

1 pair EEE New Balance (special) tennis shoes needed to accommodate my medically recognized foot condition." Defendant alleges inmate requests are answered, copied for filing purposes, and returned to the inmates in a timely fashion. Yale claims he prepared an itemized response addressing all the issues and returned it to Plaintiff. In Yale's response, Yale indicated that "personal tennis shoes are not authorized in CSC SHU - State hi-top tennis shoes meet all medical chrono criteria." Declaration of J. Yale ¶11.

42. Yale claims that at no time was he indifferent to any known serious medical needs of Plaintiff. Declaration of J. Yale ¶12. Insofar as Plaintiff claims an entitlement to footwear for medical purposes, Yale claims he was able to request a medical appointment. Yale states that had Plaintiff sought medical care and been authorized to receive special footwear for medical purposes, he would have been provided the footwear,

43. On December 20, 2001, Dr. Bhatt issued a medical chrono which states, "The inmate is under medical management and observation for a developmental foot disorder for which it is medically indicated he should continue be[sic] provided with the EEE state issued boots in accordance with previous examination and chronos pending specialist's evaluation for a period of one year dating from December 20, 2001." Plaintiff's Declaration in Support of Response to Defendant's Cross Motion for Summary Judgment, ¶ 5.

**D.    Discussion**

**1.    Defendant Yale's Motion for Summary Judgment.**

In his second amended complaint, plaintiff alleges that he arrived at Corcoran State Prison on February 15, 2001 at which time defendant Yale refused to provide him his medically prescribed shoes. Defendant Yale contends that he is entitled to summary judgment because plaintiff did not have a serious medical need requiring special shoes and he did not exhibit deliberate indifference.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501

11

U.S. 294, 298 (1991)). A serious medical need is one in which the failure to treat a condition could result in further significant injury or to the unnecessary and wanton infliction of pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

    **a.    Objective Component - Serious Medical Need**

Defendant argues that summary judgment should be granted because plaintiff did not suffer a serious medical condition with respect to his feet or need for special shoes.

On August 3, 1992, while housed at Duel Vocation Institution (DVI) Dr. Gilbert Sainz noted, that plaintiff wore Double EEE shoes and he recommended that plaintiff be allowed to wear his own shoes. UDF 6. In connection with a grievance filed on April 17, 1997, plaintiff was issued a medical chrono for EEE shoes. *See* UDF 7. On June 25, 1997, Dr. Hooper noted minor pressure

points on both feet and he issued a medical chrono for EEE size state issued boots. UDF 9. On November 16, 1999, in responding to plaintiff's appeal, the medical chrono for plaintiff's shoes was referenced. *See* UDF 12. On December 20, 2001, Dr. Bhatt issued a medical chrono stating, "The inmate is under medical management and observation for a developmental foot disorder for which it is medically indicated he should continue be [sic] provided with the EEE state issued boots in accordance with previous examination and chronos pending specialists evaluation for a period of one year dating from December 20, 2001." UDF 43. On September 17, 2002, plaintiff was seen by Dr. Krystal in the Podiatry Clinic at CSP-COR, who approved a medical chrono for state issued soft shoes while housed at Corcoran. UDF 17.

Based on the record, the Court declines to find as a matter of law that plaintiff's need for special shoes did not constitute a serious medical condition. The record includes evidence dating back to 1993 which indicates that plaintiff has required special shoes and was issued medical chronos accordingly. Despite Dr. Sanchez' opinion that plaintiff did not suffer from a serious medical condition, there is evidence in the record that plaintiff was seen by specialists for a condition which Dr. Bhatt characterized as a "developmental foot disorder." There exists a triable issue of material fact as to whether plaintiff suffered a serious medical condition with respect to his need for special shoes.

      **b.**     **Subjective Component**

Defendant next argues that assuming plaintiff has met his burden with respect to establishing a serious medical need, he is still entitled to judgment because plaintiff has failed to demonstrate the requisite deliberate indifference to support an Eighth Amendment claim.

Plaintiff contends that on March 28, 2001, defendant Yale withheld his medically prescribed shoes sent with him during his transfer to COR-SHU from High Desert State Prison. Comp. 1-7. The same day, plaintiff filed an inmate grievance regarding his withheld property. UDF 34. Yale provided an informal response to the appeal, denying plaintiff's request for his property, stating that plaintiff had been issued "all authorized property." UDF 35. Plaintiff claims he made sent several inmate requests to Yale regarding his need for his special shoes. UDF 41. Yale disputes this and claims that according to 4B property files, he only received one request dated April 1, 2001. UDF

41. Yale states that inmate requests are answered, copied for filing purposes and returned to the inmate in a timely fashion. *Id*. Yale states that in his response to plaintiff's request he stated, "personal tennis shoes are not authorized in CSPC SHU - State hi-top tennis shoes meet all medical chrono criteria." *Id*.

There exists a genuine issue of material fact as to whether Yale denied numerous requests by plaintiff for his special shoes. Defendant argues that to the extent plaintiff determined he needed the shoes due to a serious medical need, all he had to do, but failed to, was to see a physician with the problem. If medically necessary, plaintiff would have received appropriate shoes." However, it is undisputed that on June 25, 1997, while at HDSP, Plaintiff was seen by Dr. Charles Hooper, who wrote a chrono for EEE wide shoes and an order to ducat Plaintiff to a clinic for evaluation of new foot wear. UDF 9. Plaintiff claims and defendants to do not dispute that when he arrived at CSP COR, his "medically prescribed shoes" came with him. While Yale claims that all plaintiff had to do was see a physician for his problem, plaintiff claims he already had and defendant denied him his medically prescribed shoes. The record also suggests that plaintiff was deprived of the required shoes for some time after his arrival at Corcoran. These differing claims are sufficient to give rise to a triable issue of material fact regarding whether or not defendant Yale was deliberately indifferent to plaintiff's serious medical needs.

**d.   Qualified Immunity**

Defendant Yale argues that even if plaintiff's constitutional rights were violated by the denial of his shoes, he is entitled to qualified immunity because he was acting in furtherance of enforcing valid rules and regulations with respect to the denial of plaintiff's shoes.

Qualified Immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In determining whether the right was clearly

1  established, the inquiry "must be undertaken in light of the specific context of the case, not as a
2  broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have
3  been 'clearly established' in a more particularized, and hence more relevant, sense: The contours
4  of the right must be sufficiently clear that a reasonable official would understand that what he is
5  doing violates that right." Id. at 202 (internal quotations and citation omitted). In resolving these
6  issues, the Court must view the evidence in the light most favorable to Plaintiff and resolve all
7  material factual disputes in favor of Plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir.
8  2003).

9        As set forth in the preceding section of this order, there are disputed issues regarding material
10 facts regarding Plaintiff's allegation that he was deprived of special shoes in violation of the Eighth
11 Amendment. As discussed in the preceding subsection, the facts as alleged show that defendant's
12 conduct violated a constitutional right. Accordingly, the first prong of the qualified immunity
13 inquiry set forth in Saucier has been met. Saucier, 533 U.S. at 201. Turning to the second prong,
14 the court must determine whether the right was clearly established. Id.

15       Defendant contends the law was not well established that all inmates, and plaintiff in
16 particular, were entitled to soft shoes. However, as discussed, the facts are in dispute regarding
17 whether or not plaintiff had a medical condition that necessitated special shoes. As noted, on
18 December 20, 2001, Dr. Bhatt issued a medical chrono stating, "The inmate is under medical
19 management and observation for a developmental foot disorder for which it is medically indicated
20 he should continue be [sic] provided with the EEE state issued boots in accordance with previous
21 examination and chronos pending specialists evaluation for a period of one year dating from
22 December 20, 2001." UDF 43. Assuming that plaintiff had a sufficiently serious medical condition
23 to warrant special shoes, during the relevant time period it was clearly established that prison
24 officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with
25 treatment once prescribed." See Estelle v. Gamble, 429 U.S. at 104-05. The Ninth Circuit has
26 found deliberate indifference where prison officials "deliberately ignore the express orders of a
27 prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Hamilton v.
28 Endell, 981 F.2d 1062, 1066 (9th Cir. 1992) (reversing summary judgment where prison officials

forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating physician's previous orders); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curium) (reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician); Cf. McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992) (where surgery recommended by prisoner's prior physician was severely delayed, court was unable hold doctors liable because prison administrators, not the doctors, were responsible for scheduling treatment).

Given that the law was clearly established, the inquiry turns to whether it would be clear to a reasonable officer that his conduct was unlawful in the circumstance confronted by defendant. Id. at 1051. As previously stated, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez, 323 F.3d at 1184. Plaintiff contends that he made sent several inmate requests to Yale regarding his need for his special shoes. Viewed in the light most favorable to plaintiff, the court finds that it would have been clear to a reasonable officer that denial of medically prescribed shoes required for a serious medical need would violate the inmates' Eighth Amendment rights. Accordingly, the court finds that defendant is not entitled to qualified immunity, and recommends that defendant's motion for summary judgment on the ground of qualified immunity be denied. Indeed, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. See Liston v. County of Riverside, 120 F.3d 965, 967 (9th Cir. 1997); Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1997); Alexander v. City of San Francisco, 29 F.3d 1355, 1364 (9th Cir. 1994); ACT UP!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

**2.    Plaintiff's Motion for Summary Judgment**

To prevail on his motion for summary judgment, plaintiff must establish beyond controversy every essential element of his claim. Fontenot, 780 F.2d at 1194. As discussed, there are genuine issues of material fact regarding whether defendant Yale was deliberately indifferent to plaintiff's

a serious medical needs. Defendant Yale has submitted evidence that plaintiff did not have a serious medical condition and that he was not deliberately indifferent to plaintiff's requests, thus creating a dispute of fact over whether defendant's conduct violated plaintiff's rights under the Eighth Amendment. The existence of this factual dispute is sufficient to defeat plaintiff's motion for summary judgment.

**E.    Conclusion**

Based on the foregoing, it is HEREBY RECOMMENDED that plaintiff's motion for summary judgment and defendant's cross motion for summary judgment, be DENIED and this matter proceed to trial on plaintiff's Eighth Amendment claim against defendant Yale.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:    **January 23, 2007**              **/s/ Dennis L. Beck**
3b142a                                      UNITED STATES MAGISTRATE JUDGE